J-S64021-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JAMES RICHARD RENNIS, | |
| Appellant | No. 410 WDA 2014 |

Appeal from the Judgment of Sentence Entered February 5, 2014
In the Court of Common Pleas of Jefferson County
Criminal Division at No(s): CP-33-CR-0000339-2013

BEFORE:  GANTMAN, P.J., BENDER, P.J.E., and LAZARUS, J.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED OCTOBER 09, 2014**

Appellant, James Richard Rennis, appeals *pro se* from the judgment of sentence of six months' restrictive intermediate punishment (including 45 days' house arrest, drug and alcohol treatment, and highway safety school) and a $200 fine, imposed after he was convicted of three counts of driving under the influence of a controlled substance (DUI) and careless driving. Appellant challenges the sufficiency of the evidence to sustain his convictions.  We affirm.

Following a non-jury trial, Appellant was convicted of the above-stated offenses based on evidence that he drove his vehicle into a trash can and door at a drive-through beer distributor, and investigating police officers determined that he was driving while impaired by a controlled substance. Testing of Appellant's blood revealed the presence of cocaine and cocaine

metabolites. For his convictions of DUI, Appellant was sentenced to intermediate punishment. He received a $200 fine for his careless driving offense. Appellant filed a timely *pro se* notice of appeal.[1] Herein, he argues that the evidence was insufficient to sustain his convictions.[2]

Before addressing this claim, we note that Appellant's brief utterly fails to comport with the Pennsylvania Rules of Appellate Procedure. Specifically, Appellant did not include delineated sections setting forth a "Statement of Jurisdiction," "Order or Other Determination in Question," "Statement of Questions Involved," or a "Summary of Argument." *See* Pa.R.A.P. 2114-2116, 2118. Nevertheless, we will overlook these briefing errors in light of the fact that Appellant's argument is coherent enough to permit us to meaningfully review his sufficiency claim.

To begin, we note:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not

_____

[1] Appellant was represented by counsel during his trial and sentencing hearing. Following those proceedings, counsel sought leave to withdraw, which was granted by the court. Accordingly, Appellant is proceeding *pro se* on appeal.

[2] The Commonwealth did not submit a brief in this case, instead relying on the rationale expressed by the trial court in its Pa.R.A.P. 1925(a) opinion.

preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of the witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Troy***, 832 A.2d 1089, 1092 (Pa. Super. 2003) (citations omitted).

In his brief, Appellant challenges the sufficiency of the evidence on several grounds. First, he disputes the police officers' testimony that he exhibited signs of intoxication, offering other legitimate reasons for his glassy and blood shot eyes, his high blood pressure and heart rate, and his "jittery" demeanor. ***See*** Appellant's Brief at 2-3. Appellant also contends that contrary to the officers' testimony, he "was always in control through all [the standardized field sobriety] tests given to [him]." ***Id.*** at 3. In regard to the cocaine and cocaine metabolites present in his blood sample, Appellant maintains that the test results were a "false positive" and explains his reasons for that conclusion. ***Id.*** at 4. Finally, Appellant states that he did not drive into the door of the beer distributor, and only side-swiped a trash can because he was "follow[ing] the hand signals" of a beer distributor employee. ***Id.*** at 6. For all of these reasons, Appellant contends that the evidence was insufficient to convict him of DUI and careless driving.

Appellant is essentially asking this Court to "weigh the evidence and substitute our judgment for the fact-finder[,]" which **Troy** expressly states this Court may not do. Instead, we must accept the trial court's determination that the Commonwealth's evidence was credible and assess whether that evidence was sufficient to prove the element(s) of the offenses for which Appellant was convicted. After carefully reviewing the record, we conclude that it was.

Appellant was convicted of three counts of DUI under 75 Pa.C.S. § 3802(d)(1)(ii), (d)(1)(iii), and (d)(2). Those sections state:

> **(d) Controlled substances.--**An individual may not drive, operate or be in actual physical control of the movement of a vehicle under any of the following circumstances:
>
> > (1) There is in the individual's blood any amount of a:
> >
> > …
> >
> > (ii) Schedule II or Schedule III controlled substance, as defined in The Controlled Substance, Drug, Device and Cosmetic Act, which has not been medically prescribed for the individual; or
> >
> > (iii) metabolite of a substance under subparagraph (i) or (ii).
> >
> > (2) The individual is under the influence of a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle.

75 Pa.C.S.A. § 3802(d).

To prove these offenses, the Commonwealth presented the testimony of Sherri Kacinko, Ph.D., who was the toxicologist who tested the blood

sample drawn from Appellant shortly after he drove his vehicle. N.T., 11/25/13, at 51-52. Dr. Kacinko testified that Appellant's blood "contained cocaine" and "the cocaine metabolite benzoylecgonine." *Id.* at 61-62. She also stated that the test conducted on Appellant's blood "is a specific test for which there are no identified substances that will give a false positive, and the nature of the testing is such that it is considered a very specific test for cocaine." *Id.* at 63. Based on Dr. Kacinko's testimony, the Commonwealth proved that Appellant committed DUI under section 3802(d)(1)(ii) and (iii).

Additionally, the Commonwealth's evidence also proved that Appellant committed DUI under section 3802(d)(2). The first police officer who arrived at the scene, Brookville Police Officer Vince Markle, testified that Appellant's speech was slurred and "[h]is actions were slower than normal." *Id.* at 13. Officer Markle conducted three field sobriety tests, which Appellant was unable to successfully complete. *Id.* at 13-14. Based on Appellant's performance during those tests, and Officer Markle's training and experience, he concluded that Appellant "was under the influence of some type of drug" to a "degree that rendered him incapable of safe driving[.]" *Id.* at 15, 22.

After Officer Markle transported Appellant to the police station, he was evaluated for a second time by Pennsylvania State Police Trooper Robert C. Means, who is a certified drug recognition expert (DRE). *Id.* at 28. Trooper Means testified as an expert in the field of drug recognition. *Id.* at 32-33. The trooper explained that during his evaluation, Appellant "had a confused

but very alert appearance[,]" and Appellant "seemed very jittery, had a hard time sitting still." *Id.* at 34. Appellant "complained of having a dry mouth." *Id.* at 35. Trooper Means noted that Appellant's blood pressure was high and he had "an above-normal pulse rate[,]" both of which indicated the "presence of a possible stimulant." *Id.* Trooper Means also conducted field sobriety tests of Appellant and concluded that "each test administered … indicated that he was impaired on a drug, unable to complete any of the tests satisfactorily, had a difficult time following simple instructions, [and] often needed repeated [instructions] as to what I wanted him to do." *Id.* at 35-36. As an example, the trooper testified that he had to repeatedly tell Appellant not to begin performing the sobriety tests until instructed to do so. *Id.* at 46.

Trooper Means also testified that during one phase of the evaluation, Appellant's nasal cavity was examined and the trooper "observed that … the interior of his nostril cavity was red, it was raw, and it was irritated. There was also a white residue present within [Appellant's] nasal cavity itself." *Id.* at 37. When questioned about the white residue, Appellant claimed that "he had snorted candy." *Id.* at 37. Trooper Means asked Appellant what kind of candy he had snorted, and Appellant stated "that he was snorting Pixy Stix because he had a sweet tooth." *Id.* Appellant also told the trooper at various points throughout the evaluation that he had taken Tylenol and Tramadol, which "made him dizzy," and that he had also taken a caffeine pill earlier that morning. *Id.* at 36, 45. Based on Trooper Means' evaluation,

and his expertise, training, and experience, he opined that Appellant "was impaired on a narcotic analgesic as well as a stimulant." *Id.* at 38.

We conclude that the testimony of Officer Markle and Trooper Means provided sufficient evidence to prove that Appellant was driving his vehicle while under the influence of a drug to a degree that impaired his ability to safely operate his vehicle. Accordingly, the Commonwealth proved Appellant committed DUI under section 3802(d)(2).

Likewise, the testimony of the beer distributor employee that Appellant drove his vehicle "into [a] trash can and smacked a rail on the door" of the building because he "cut it a little too close" was sufficient to support Appellant's conviction of careless driving. N.T. at 4-5, 6; 75 Pa.C.S. § 3714(a) ("Any person who drives a vehicle in careless disregard for the safety of persons or property is guilty of careless driving, a summary offense."). Therefore, all of Appellant's convictions must be upheld.

Judgment of sentence affirmed.


Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/9/2014

- 7 -